UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

D‌AVID M‌ASSAMORE                                                                                                              P‌LAINTIFF

v.                                                                                                                      No. 5:21-cv-66-BJB

RBRC, I‌NC., ET AL.                                                                                                     D‌EFENDANTS

\* \* \* \* \*

**M‌EMORANDUM O‌PINION & O‌RDER**

Jean Massamore passed away in April 2020 as a result of Covid-19. Complaint (DN 1-1) ¶¶ 37–38. Until March 2020 she had lived at the River's Bend Retirement Community. ¶ 3. The executor of her estate, David Massamore, sued the nursing home, its corporate owner, and two nursing home administrators for negligence and wrongful death. The Defendants removed this case to federal court on the basis of federal-question jurisdiction and federal-officer removal. Notice of Removal (DN 1) ¶ 12. Since then, the Defendants have moved to dismiss, DN 8, and Massamore has moved to remand the case to state court, Remand Motion (DN 9).

A defendant "bears the burden of showing that removal was proper," and "any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court." *Citizens Bank v. Plasticware, LLC*, 830 F. Supp. 2d 321, 324–25 (E.D. Ky. 2011). Because the Complaint isn't completely preempted by federal law, doesn't assert a federal cause of action, or relate to an act performed under color of a federal officer, the Court remands the case to state court.

I.   **Complete Preemption**

Removal is proper if the Court would "have original jurisdiction" over the case. 28 U.S.C. § 1441(a). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The most common form of "arising under" jurisdiction is "a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Under the "well-pleaded complaint" rule, courts determine the existence of a federal question without regard to defenses based on federal law. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–10 (1983).

Even if the complaint alleges no federal cause of action, complete preemption by federal law may confer jurisdiction if it completely preempts the state claim. A federal statute does so if it provides "the exclusive cause of action for the claim

1

asserted and also set[s] forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Cedars-Sinai Medical Center v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) ("federal law must both (1) provide remedies that displace state law remedies (displacement of remedies) and (2) conflict with state law (conflict preemption)."). In these rare circumstances, "the preemptive force [of the federal statute] is so powerful as to displace entirely any state cause of action," so "any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law" for jurisdictional purposes. *Franchise Tax Bd.*, 463 U.S. at 23–24. The Supreme Court has applied this "limited rule" to only *three* statutes: ERISA, the Labor Management Relations Act of 1947, and the National Bank Act (of 1864). *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563–64 (6th Cir. 2007) (collecting Supreme Court and Sixth Circuit decisions). Complete preemption is necessary to render federal jurisdiction exclusive and supersede the concurrent jurisdiction of state courts to apply federal law. A federal rule of decision that preempts a state law—in the ordinary Article VI sense—"will not provide a basis for removal." *Beneficial Nat'l Bank*, 539 U.S. at 6.

**A. PREP Act.** The Defendants haven't identified any federal appellate or in-circuit district-court decision holding that the PREP Act, enacted in 2005, completely preempts state-law wrongful-death claims. That law provides a broad *defense* to state and federal claims as well as an exclusive federal cause of action for willful misconduct. Specifically, the Act provides "immun[ity] from suit and liability under Federal and State law with respect to all claims for loss caused by … the use … of a covered countermeasure" by "covered person[s]" once the Secretary makes a declaration "that a disease or other health condition" rises to "a public health emergency." 42 U.S.C. § 247d-6d(a)–(b). This defense, however, includes an exception to immunity for "willful misconduct," for which "an exclusive Federal cause of action" exists in the U.S. District Court for the District of Columbia "against a covered person for death or serious physical injury proximately caused by willful misconduct." § 247d-6d(d)(1). Willful misconduct refers to "an act or omission that is taken intentionally to achieve a wrongful purpose; knowingly without legal or factual justification; and in disregard of a known or obvious risk." § 247d-6d(c)(1)(A). This is "more stringent than a standard of negligence in any form or recklessness." § 247d-6d(c)(1)(B).

Massamore's wrongful-death claims aren't completely preempted because they alleged negligence, not willful misconduct. As the Fifth Circuit recently held in a strikingly similar nursing-home-negligence case, a "willful-misconduct cause of action cannot completely preempt" negligence claims. *Mitchell v. Advanced HCS, L.L.C.*, --- F.4th ---, 2022 WL 714888, at *3 (5th Cir. Mar. 10, 2022) (affirming remand despite complete-preemption, substantial-federal-question, and federal-officer removal arguments). Two other federal courts of appeals recently reached the same conclusion. *See Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 410–11 (3d Cir. 2021) (willful-misconduct doesn't include negligence claims and cannot completely

preempt state claims); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 687–88 (9th Cir. 2022) (same).

These holdings are sound, and accord with at least one ruling from within this district. The PREP Act's immunity provision is no more than "a federal defense," which doesn't create federal-question jurisdiction. *Estate of Cowan v. LP Columbia KY, LLC*, 530 F. Supp. 3d 695, 701 (W.D. Ky. Mar. 31, 2021); *see also Mitchell*, 2022 WL 714888 at *5 ("the relevance of the Act's immunity provisions is defensive, as is its preemptive effect"). Nothing in the immunity subsection indicates complete preemption: unlike the willful-conduct provision discussed below, this provision supplies defendants with a federal defense to liability. It doesn't provide an "exclusive cause of action." *Beneficial Nat'l Bank*, 539 U.S. at 8.

Nor does the exception to this immunity for willful misconduct—an exception which also supplies plaintiffs with a federal administrative claim—help Massamore. A state-law claim may nevertheless be subject to exclusive federal jurisdiction if the plaintiff "*could have* brought his claim" under a federal statute that completely preempts state law. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (emphasis added). Massamore couldn't have. The Complaint alleges that the Defendants "failed to discharge their obligations of care to Jean Massamore," ¶ 22, because they allowed the residents to mingle with each other and the staff without personal protective equipment, ¶ 26–27. And it says the nursing home was aware of the risk associated with Covid-19 because it "shut down its facility to outside visitors due to the coronavirus outbreak." ¶ 24. This alleges unreasonable conduct in the face of a known risk, not the willful creation of a risk. It falls short of alleging that any Defendant acted "intentionally to achieve a wrongful purpose." § 247d-6d(c)(1)(A)(i). So Defendants cannot rely on the existence of this exclusively federal claim to remove Massamore's state negligence claim. *See Mitchell*, 2022 WL 714888 at *3 (plaintiff couldn't have brought his negligence claims as willful-misconduct ones).

**B. Deference.** Defendants urge the Court to eschew its best reading of the statutory text in deference to the Secretary of Health and Human Service's purported interpretation of the PREP Act to completely preempt state-law claims. That interpretation is set forth in a series of advisory opinions from the HHS Office of General Counsel that themselves purport to interpret the Secretary's declaration of a public-health emergency. Response (DN 16) at 8–12 (citing U.S. Dept. of Health & Human Servs., Office of the General Counsel, Advisory Opinion 21-01 (Jan. 8, 2021) (DN 1-9)). The advisory opinion surmised that the PREP Act completely preempts state law because "it establishes either a federal cause of action … as the only viable claim or vests exclusive jurisdiction in a federal court." Advisory Op. 21-01 at 2. The analysis that follows, however, only addresses federal exclusivity in the context of a willful-misconduct claim, and makes no case for complete preemption *whenever* a PREP defense is available. *Id.* at 2–4. But this advisory opinion is not entitled to this Court's deference.

3

First, the Supreme Court recently explained that *Chevron* deference doesn't apply to administrative interpretations of "[t]he scope of judicial review." *Smith v. Berryhill*, 139 S. Ct. 1765, 1778 (2019) (distinguishing *Chevron, U.S.A. v. NRDC*, 467 U.S. 837, 842–43 (1984)). That "is hardly the kind of question that the Court presumes that Congress implicitly delegated to an agency." *Id.* (*citing Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649–50 (1990)); *see also Mitchell*, 2022 WL 714888 at *2 n.3.

Second, this advisory opinion is not the sort of binding ruling or regulation that may receive deference under *Chevron*. The advisory opinion states plainly that it merely "sets forth the current views of the Office of the General Counsel," "is not a final agency action or a final order." Advisory Op. 21-01 at 5. That means it doesn't come close to carrying the force or effect of law. *See United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) ("[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law."). "HHS"—not to mention the Office of General Counsel—"is not delegated authority under the PREP Act to interpret the scope of the federal courts' jurisdiction." *Maglioli*, 16 F.4th at 403; *see also Mitchell*, 2022 WL 714888 at *2 n.3 (no deference warranted for AO 21-01).

The Defendants maintain that the advisory opinion *does* carry the force of law because the Secretary incorporated it into his Fourth Amended Declaration of Emergency. Response at 10 (citing DN 1-8). Even assuming the Declaration would be entitled to *Chevron* deference, however, and further assuming an amendment could bootstrap other advisory opinions to that status, that is not what the Amended Declaration says. It merely "[c]larifies that the Declaration must be construed in accordance with the [HHS OGC] Advisory Opinions … [and] incorporates the Advisory Opinions for that purpose." DN 1-8 at 3. This reads like a rule of construction, not a rule of law, and offers no basis to rank the advisory opinions (even on a post hoc basis) among the sorts of agency interpretations entitled to *Chevron* deference. Certainly the Defendants offer no authority or reason to read them otherwise.

Third, the advisory opinion likewise does not receive *Auer* deference (whatever remains of that doctrine) as a controlling agency interpretation of its own regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Kisor v. Willkie*, 139 S. Ct. 2400, 2414 (2019). The advisory opinion purported to interpret the text of the PREP Act, not any regulation implementing it. The Defendants say it also interpreted the Secretary's Declaration of a public health emergency. Response at 12. Not so. In any event, even assuming that Declaration amounts to a regulation in need of interpretation, the Secretary's authority to offer a controlling construction still wouldn't reach beyond HHS's own authority to a question of federal jurisdiction. *Maglioli*, 16 F.4th at 403.

4

Fourth, the advisory opinion still might claim deference commensurate with "those factors which give [it] the power to persuade." *Skidmore v. Swift & Co*, 323 U.S. 134, 140 (1944). But that is a limited amount of deference that is here supported by only a limited persuasive power. The advisory opinion asserts, but hardly explains, that the PREP Act both "establishes … a federal cause of action … as the only viable claim or vests exclusive jurisdiction in a federal court." Advisory Op. 21-01 at 2. Instead, the opinion goes on to discuss when the PREP Act's *defense* is triggered for liability purposes, specifically whether the "non-use of a covered countermeasure" comes within the Act's protection. *See id.* at 2–4. It ignores the sorts of jurisdictional preemption authorities and arguments discussed above. Multiple decisions have declined to assign weight to this opinion, and this Court likewise perceives little illumination in its reasoning. *E.g.*, *Estate of Cowan*, 530 F. Supp. 3d at 703 (AO 21-01 "is unpersuasive"); *Maglioli*, 16 F.4th at 404("Even if HHS has something valuable to say on the matter, we do not find it in these statements.").

Under these circumstances, the PREP Act supplies Defendants with (at most) a defense they may assert in state court, not a ticket to federal court.

## II. Substantial Federal Question

State-law claims may nevertheless raise federal questions if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Defendants argue that Massamore's claims "necessarily implicat[e] disputed and substantial federal issues" and that "substantial federal legal and policy … interests" depend on a "unified" interpretation of the PREP Act. Response at 19, 20 (quoting Advisory Op. 21-01 at 5).

But the "federal issue" must appear as "a necessary *element* of one of the well-pleaded state claims," instead of as a defense. *Mikulski*, 501 F.3d at 565 (emphasis added) (quoting *Franchise Tax Bd.*, 463 U.S. at 13). And the PREP Act doesn't bear on the elements of either the negligence or the wrongful-death claims . *Estate of Cowan*, 530 F. Supp. 3d at 698, 705 (negligence, violation of KRS § 216.515, wrongful death, and breach of contract don't require interpretation of the PREP Act). So this supplies no basis for removal either.

## III. Federal Officer Removal

Finally, suits against "any officer (or any person acting under that officer) of the United States or of any agency" are also removable if the lawsuit is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). A defendant other than a federal officer may take advantage of this provision only if "(1) it is a person within the meaning of the statute who acted under a federal officer; (2) it performed the actions for which it is being sued under color of federal office; and (3) it raised a

5

colorable federal defense." *Nappier v. Snyder*, 728 F. App'x 571, 574 (6th Cir. 2018) (quotation omitted). Defendants contend they meet this test because the nursing home acted under federal directives during the pandemic and have raised the PREP Act as a colorable defense. Massamore, however, asserts that following federal regulations isn't equivalent to "acting under" a federal officer.

The "acting under" language of § 1442 is "broad" but "not limitless." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). "[S]imply *complying* with the law" isn't enough. *Id.* at 152. This is true "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153. That sounds a lot like the work of a nursing home. A government contractor, by contrast, may "ac[t] under" a federal officer if its tasks are ones "the Government itself would have had to perform" in the absence of the contractors' efforts. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1087 (6th Cir. 2010) (quoting *Watson*, 551 U.S. at 153–54). Again, this requires more than "simple compliance with the law." *Watson*, 551 U.S. at 152.

The "very detailed clinical directives and instructions" that Defendants cite are no more than regulations they must comply with. Notice of Removal ¶ 58. As *Watson* clarified, even "highly detailed" regulations don't transform private actors into deputies of federal officers. 551 U.S. at 153. And these directives, in any case, may not even have been mandatory. Notice of Removal ¶ 68. A CDC alert from March 2020, for example, clearly states that it contains "guidance and recommendations." CDC, *Updated Guidance on Evaluating and Testing Persons for Coronavirus Disease 2019 (COVID-19),* https://emergency.cdc.gov/han/2020/HAN00429.asp; Notice of Removal ¶ 66 n.8 (citing *Updated Guidance*). Another cited document (¶ 67 n.9) states the same: "This document offers a series of strategies or *options* to optimize supplies…." CDC, *Optimizing N95 Respirator Supplies*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/respirators-strategy/index.html (emphasis added). Running a nursing home by choosing among these recommendations and options doesn't qualify as "acting under" a federal officer. § 1442(a)(1); *Watson*, 551 U.S. at 152.

A number of post-pandemic precedents confirm that federal Covid guidelines didn't transform nursing homes and the like into federal officers for purposes of federal jurisdiction. "'[V]erbiage denoting guidance, not control,' is insufficient to establish the kind of relationship necessary to invoke the statute." *Mitchell*, 2022 WL 714888, at *6 (quoting *Maglioli*, 16 F.4th at 405 (citing *Watson*, 551 U.S. at 153)). *See also* Reply (DN 18) at 10–11 (collecting decisions).

In response, the Defendants fall back on a single out-of-circuit case involving very different circumstances. Response at 23 (citing *Fields v. Brown,* 519 F. Supp. 3d 388 (E.D. Tex. 2021)). That ruling involved a meatpacking plant working in connection with the Agriculture Department. The nursing home's situation is analogous, they say, for three reasons: its designation as "critical infrastructure,"

close government monitoring, and mandatory reporting requirements. *Id.* None is availing. The critical-infrastructure designation applies to a wide swath of industries and hardly indicates the kind of closeness required for § 1442. That status, the Third Circuit recently recognized, also applied to "doctors, weather forecasters, clergy, farmers, bus drivers, plumbers, dry cleaners, and many other workers" whom "Congress did not deputize … as federal officers." *Maglioli*, 16 F.4th at 406. Nor do the Defendants offer anything to distinguish their need to abide by mandatory reporting requirements from "simply *complying* with the law." *Watson*, 551 U.S. at 152. And River Bend's interactions with the federal government, which consist largely of following CDC guidelines (which as noted were not always even mandatory), Notice of Removal ¶¶ 52–58, doesn't approach the closeness of the relationship of huge factories "working directly with the United States Food Safety and Inspection Service," whose government "employees [were] staffed onsite at meatpacking plants … to ensure that they maintained operations," according to a special appropriation of federal funds. 519 F. Supp. 3d at 392–93 (internal citations omitted). Even assuming that case was correctly decided on those particular facts, which is not entirely clear, the Defendants point to nothing approaching such a collaborative quasi-governmental relationship. So they cannot remove under § 1442 either.

## ORDER

The Court grants Massamore's motion to remand (DN 9) and denies as moot Defendants' motion to dismiss (DN 8).

Benjamin Beaton, District Judge
United States District Court

March 31, 2022